


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

# 20289

CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM and IRON WORKERS OF WESTERN PENNSYLVANIA PENSION PLAN, On Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

ICG, INC. a/k/a INTERNATIONAL COAL GROUP, INC., WILBUR L. ROSS, JR., JON R. BAUER, CYNTHIA B. BEZIK, WILLIAM J. CATACOSINOS, BENNETT K. HATFIELD, MARCIA L. PAGE, WENDY L. TERAMOTO, WILLIAM D. CAMPBELL, UBS INVESTMENT BANK and LEHMAN BROTHERS,

Defendants.

No. 2:07-0226

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE SECURITIES ACT OF 1933

DEMAND FOR JURY TRIAL

For their Complaint, plaintiffs allege:

## NATURE OF THE ACTION

1. This is a class action on behalf of all persons who acquired the common stock of International Coal Group, Inc. ("ICG" or the "Company") in connection with and traceable to ICG's common stock offerings (the "Class") which took place on or about 11/21/05 and 12/7-8/05 (the Offerings"), charging the Company, its senior executives and directors and its underwriters with violations of the Securities Act of 1933 (the "1933 Act"). The Class Period is 11/18/05 through 10/4/06.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under §§11, 12(a)(2) and 15 of the 1933 Act. This Court has jurisdiction over this action pursuant to §22 of the 1933 Act and 28 U.S.C. §1331.

3. Venue is proper in this District pursuant to §22 of the 1933 Act and 28 U.S.C. §1391(b). Many of the acts giving rise to the violations complained of, including the dissemination of false and misleading information, occurred in this District.

4. In connection with the wrongs complained of, the defendants used the instrumentalities of interstate commerce, the U.S. mails and the facilities of the national securities markets.

## THE PARTIES

5. (a) Plaintiff City of Ann Arbor Employees' Retirement System purchased shares of ICG stock as shown in the attached certification. The shares purchased by this plaintiff were issued and sold pursuant to the defective 11/05 or 12/05 Registration Statements. Plaintiff has suffered substantial damages as a result of this purchase.

(b) Plaintiff Iron Workers of Western Pennsylvania Pension Plan purchased shares of ICG stock as shown in the attached certification. The shares purchased by this plaintiff

were issued and sold pursuant to the defective 11/05 or 12/05 Registration Statements. Plaintiff has suffered substantial damages as a result of this purchase.

6. Defendant ICG, Inc. is a corporation which maintains its executive offices at Scott Depot, West Virginia. ICG is a coal producer. ICG filed Registration Statements for the 11/05 and 12/05 stock offerings, both of which became effective with the Securities and Exchange Commission ("SEC"). The Company's stock is traded in an efficient market on the New York Stock Exchange.

7. (a) Defendant Wilbur L. Ross, Jr. ("Ross") at all relevant times was Chairman of the Board of the Company.

(b) Defendant Jon R. Bauer ("Bauer") at all relevant times was a director of the Company.

(c) Defendant Cynthia B. Bezik ("Bezik") at all relevant times was a director of the Company.

(d) Defendant William J. Catacosinos ("Catacosinos") at all relevant times was a director of the Company.

(e) Defendant Bennett K. Hatfield ("Hatfield") at all relevant times was President, CEO and a director of the Company.

(f) Defendant Marcia L. Page ("Page") at all relevant times was a director of the Company.

(g) Defendant Wendy L. Teramoto ("Teramoto") at all relevant times was a director of the Company.

(h) Defendant William D. Campbell ("Campbell") at all relevant times was Vice President and Treasurer of the Company.

8. The individuals named as defendants in ¶7(a)-(h) are sometimes referred to herein as the "Individual Defendants." At all times material hereto, each of the Individual Defendants was

the agent of the Company, and at all times acted within the course and scope of said agency. Because of each of the defendants' positions as directors and/or officers of ICG, they had access to the adverse non-public information about ICG's operations via access to internal corporate documents (including the Company's operating plan, budget and forecasts), conversations and connections with other corporate officers and employees, attendance at management and/or Board of Directors' meetings and committees thereof and via reports and other information provided to them in connection with the Offerings. Each of the Individual Defendants signed the 11/05 and 12/05 Registration Statements. As signatories of the 11/05 and 12/05 Registration Statements, the Individual Defendants each had a duty to conduct a reasonable investigation in connection with the Offerings to ensure that the statements made therein were not untrue and that the statements made in the 11/05 and 12/05 Registration Statements did not omit any fact necessary to make the statements made not misleading.

9. Defendant Ross, by reason of his stock ownership, management position, and membership on the Company's Board of Directors, was a controlling person of the Company.

10. Defendants UBS Investment Bank ("UBS") and Lehman Brothers ("Lehman") (collectively, the "Defendant Underwriters") acting as Lead Underwriters, organized a syndicate which underwrote the 12/05 initial public offering ("IPO") of ICG's stock sold to plaintiffs and the Class. The Defendant Underwriters are investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities and acting as marketmakers in publicly traded securities. In connection with the 12/05 IPO, representatives of the Defendant Underwriters had access to ICG and its top executives and thus had access to and/or obtained ICG's internal corporate information, including the adverse information omitted and/or misrepresented, as alleged herein.

11. The Defendant Underwriters, directly and through their agents and representatives, assisted ICG and the Individual Defendants in planning the 12/05 IPO and supposedly conducted

an adequate and reasonable investigation into the business and operations of ICG, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Defendant Underwriters in order engage in the 12/05 IPO. In the course of the investigation, the underwriters and their agents met with representatives, employees and agents of ICG, including Ross and others, and reached understandings as to (i) the strategy to best accomplish the 12/05 IPO; (ii) the terms of the 12/05 IPO; (iii) the language to be used in the 12/05 IPO Registration Statement and Prospectus; (iv) what disclosures about ICG would be made in the Prospectus; and (v) what responses would be made to the SEC in connection with its review of the 12/05 Registration Statement.

**SUBSTANTIVE ALLEGATIONS**

12. ICG is a coal producer with operations in West Virginia, Kentucky, Maryland and Illinois. The Company was founded by W.L. Ross and Co. LLC and other investors to acquire the assets of distressed coal companies that had broken their union contracts and were thus "union-free." It acquired the key assets of Horizon NR, LLC out of bankruptcy and later acquired the Anker Coal Group, Inc. ("Anker") and CoalQuest Development, LLC ("CoalQuest") coal companies.

13. In 11/05 and 12/05, ICG undertook two integrated stock transactions involving Registration Statements filed and effective with the SEC. The two Offerings were mutually interdependent. On 11/18-21/05, the Company acquired Anker and engaged in a reorganization. In this reorganization,

> (1) the existing International Coal Group, Inc. changed its name to "ICG, Inc.," and (2) a new company became the holding company for ICG, Anker and CoalQuest and adopted the name "International Coal Group, Inc." Shareholders who acquired shares of the "old International Coal Group" when it was organized in 2004 will receive shares of the new holding company in a one-for-one tax-free exchange. The directors and officers of old International Coal Group became the directors and officers of the new holding company.
>
> * * *

The conditions to the reorganization and Anker and CoalQuest acquisitions are complete, subject only to the issuance of shares of new International Coal Group being registered under the federal securities laws and other customary conditions, such as the absence of material litigation. As a result of the registration, all International Coal Group common shares held by former ICG shareholders will be freely tradable . . . . The new holding company also plans to sell common shares to the public in a registered public offering, although there is no assurance that the public offering will be completed.

. . . Stock certificates which previously represented old International Coal Group common shares will represent shares of new International Coal Group after the transactions.

14. A question and answer section of the 11/05 Registration Statement stated:

Q: What is the purpose of this document?

A: This prospectus is part of a registration statement that registers the shares of International Coal Group that you will receive in connection with the reorganization under the federal securities laws.

15. The 11/05 Registration Statement also stated:

On March 31, 2005, International Coal Group also entered into an agreement to acquire CoalQuest, for the lesser of (1) 11,451,548 International Coal Group common shares and (2) the number of common shares equal to 101,750,000 divided by the price per share at which International Coal Group's common stock is offered in the proposed public offering.

* * *

ICG is a leading producer of coal in Central Appalachia, with mining complexes located in Kentucky and West Virginia. ICG has a complementary mining complex located in the Illinois Basin. ICG acquired its current properties in 2004 from Horizon through a bankruptcy auction.

* * *

International Coal Group, Inc.

International Coal Group was formed in March 2005 to be ICG's new top-tier parent holding company following the reorganization. International Coal Group currently has no operations and no significant assets. Following the completion of the reorganization and acquisitions, International Coal Group will own, through ICG, all of the ICG business as well as Anker and CoalQuest.

16. On 12/8/05, ICG completed its IPO of its common stock – selling 21 million shares at $11 per share in a firm commitment underwritten public offering, in which the Lead Underwriters were UBS and Lehman. According to the 12/05 Registration Statement:

> The term "Horizon" refers to Horizon NR, LLC (the entity holding the operating subsidiaries of Horizon Natural Resources Company) and its consolidated subsidiaries, the term "Anker" refers to Anker Coal Group, Inc. and its consolidated subsidiaries, and the term "CoalQuest" refers to CoalQuest Development, LLC. References to the "Anker and CoalQuest acquisitions" refer to our acquisition, respectively, of each of Anker and CoalQuest, which occurred on November 18, 2005.
>
> Immediately prior to this offering, we and our subsidiaries underwent a corporate reorganization in which we became the parent holding company and ICG, Inc., the prior parent holding company, became our subsidiary.

17. The 12/05 Registration Statement stated:

**OUR STRENGTHS**

> **Ability to provide variety of high-quality steam and metallurgical coal.** Our customers, which include largely investment grade electric utilities, as well as domestic and international industrial customers, demand a variety of coal products. Our variety of coal qualities also allows us to blend coal in order to meet the specifications of our customers. Our access to a comprehensive range of high Btu steam and metallurgical quality coal allows us to market differentiated coal products to a variety of customers with different coal quality demands, which allows us to benefit from particularly strong pricing dynamics in the current market.
>
> * * *
>
> **Ability to capitalize on strong coal market dynamics.** A significant portion of our coal supply contracts were renegotiated during the second half of 2004 in connection with Horizon's bankruptcy and were re-priced at that time to then-current (and more favorable) market prices and terms. Our marketing effort is focused on maintaining a balance of longer-term contracts and spot sales.
>
> * * *
>
> **Highly skilled management team.** The members of our senior management team have, on average, 23 years of industry work experience across a variety of mining methods, including longwall mining. We have substantial Appalachian mining experience in increasing productivity, reducing costs, enhancing work safety practices, and maintaining strong customer relationships. In addition, the majority of our senior management team has extensive mine development and expansion experience.

**Recognized leadership in safety and environmental stewardship.** The injury incident rates at our mines throughout 2004, according to the Mine Safety and Health Administration, or MSHA, were below industry averages. We have been recognized by safety and environmental agencies with several prestigious awards for our safety and environmental record, such as the "Sentinels of Safety Award" from MSHA, the Deparment of Interior "Excellence in Surface Coal Mining and Reclamation Award" and a reclamation award for innovative methods from the West Virginia Coal Association. Our focus on safety and environmental performance results in the reduced likelihood of disruption of production in our mines, which leads to higher productivity and improved financial performance.

18. The 12/05 Registration Statement also provided:

**OUR BUSINESS STRATEGY**

**Maximize profitability through highly efficient and productive mining operations.** We are continuing to evaluate and assess our current operations in order to maximize operating efficiency and returns on invested capital. We are focused on maintaining our low-cost, highly productive operations by continuing to invest substantial capital in state-of-the-art equipment and advanced technologies. We expect to internally fund approximately $304 million of capital expenditures in the next two year. As we take advantage of planned expansion opportunities from 2007 through 2009 principally as a result of the Anker and CoalQuest acquisitions, we expect to spend approximately $627 million on capital expenditures, which may require external financing.

**Leverage owned and controlled reserves to generate substantial internal growth.** . . . We currently expect underground longwall mining operations at this reserve to commence within the next four years, which will increase our production level by providing highly valued premium quality coal in an increasingly tight supply market. . . .

**Capitalize on favorable industry fundamentals by opportunistically marketing coal.** U.S. coal market fundamentals are among the strongest in the last 20 years. We believe this generally favorable pricing environment will persist given systemic changes in market dynamics such as long-term supply constraints and increasing demand, particularly in Central Appalachia and for our metallurgical coal. Furthermore, because of the high quality of our coal, our access to a variety of alternative transportation methods, including truck, rail and barge, and our mix of long-term contract and spot market sales, we will be able to capitalize on the favorable industry dynamics to maximize our revenues and profits. . . .

**Continue to focus on improving workplace safety and environmental compliance.** We have maintained and plan to continue to maintain an excellent safety and environmental performance record. We continue to implement safety measures and environmental initiatives that are designed to promote safe operating practices and improved environmental stewardship among our employees. Our ability to maintain a good safety and environmental record improves our productivity and lowers our overall cost structure as well as bolsters employee morale.

19. On 11/18-21/05, ICG consummated the Anker and CoalQuest acquisitions pursuant to which each of Anker and CoalQuest became indirect wholly owned subsidiaries. The actual number of shares of common stock to be issued was based upon the price of the shares of common stock sold in the IPO and certain other contingencies.

20. The 11/05 Registration Statement contained the same or substantially the same representations and statements as the 12/05 Registration Statement.

21. The statements in the 11/05 and 12/05 Registration Statements concerning the Company's business, the strength of its management team, its safety and maintenance practices, its ability to capitalize on favorable market conditions, its ability to deliver optimum selections of coal to meet increasing demand, and the Anker coal acquisition were all false and misleading when made. In fact, the Company was suffering from serious shortfalls in its maintenance and safety procedures, its mines were ill-equipped (as were its miners), the Anker acquisition had been a mistake, saddling the Company with outmoded and dangerous mining operations, the Company's top management team was distracted by work involved in the 11/05 reorganization and 12/05 IPO and the Company would be unable to produce sufficient amounts of coal in desired mixes to meet its revenue and earnings and production forecasts.

22. After the 11/05 and 12/05 Registration Statements became effective, information entered the marketplace in a series of company-specific negative revelations contradicting prior representations made and demonstrating the falsity of those Registration Statements. As a result of this, the Company's stock price declined sharply, damaging Class members who purchased the stock issued by the Company in the 11/05 and 12/05 Registration Statements.

**PLAINTIFF CLASS ALLEGATIONS**

23. Plaintiffs bring this action pursuant to Rule 23 of Federal Rules of Civil Procedure on behalf of the Class which consists of all persons who acquired ICG common stock in connection

with and traceable to the Company's 11/05 and/or 12/05 Registration Statements. The Class Period is 11/18/05 through 10/4/06. Excluded from the Class are the defendants and members of their immediate families, any entity in which a defendant has an interest and the heirs of any such excluded party.

24. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at the present time, the defendants sold millions of shares of common stock pursuant to the 11/05 and 12/05 Registration Statements.

25. Plaintiffs' claims are typical of the claims of the Class because plaintiffs and all the Class members sustained damages which arose out of the defendants' unlawful conduct complained of herein.

26. Plaintiffs are representative parties who will fully and adequately protect the interests of the Class members. Plaintiffs have retained counsel who are experienced and competent in both class action and securities litigation. Plaintiffs have no interests which conflict with those of the Class they seek to represent.

27. A class action would be superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, which could establish incompatible standards of conduct for defendants. Questions of law and fact common to the Class predominate over any questions which may affect only individual members. Among the common questions of law and fact are:

(a) whether the Registration Statements and/or Roadshow presentations and/or defendants' aftermarket statements omitted and/or misrepresented material facts;

(b) whether federal securities laws were violated by defendants' acts as alleged herein; and

(c) loss causation and the appropriate measure of damages.

**STATUTORY SAFE HARBOR**

29. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint, as plaintiffs have alleged that defendants misrepresented currently existing facts and the forward-looking statements were made in connection with the Company's IPO.

**COUNT I**

**Against All Defendants for Violations of §11 of the 1933 Act**

30. Plaintiffs repeat and reallege ¶¶1-29, as if set forth herein.

31. This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class against all defendants.

32. The 11/05 and 12/05 Registration Statements were inaccurate and misleading, as they omitted to state facts necessary to make the statements made not misleading, failing to adequately disclose material facts as described above.

33. The Company is the registrant of the stock sold via the Registration Statements. As the issuer of shares pursuant to defective Registration Statements, the Company is strictly liable to plaintiffs and the Class for the misstatements and omissions.

34. Each of the Individual Defendants signed the Registration Statements.

35. None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true, did not omit any material fact and were not misleading.

36. The Defendant Underwriters underwrote the ICG shares sold in the 12/05 offering as defined in §11(a)(5) of the 1933 Act.

37. As underwriters of the 12/05 offering, the Defendant Underwriters were obligated to make a reasonable and diligent investigation of the statements contained in the 12/05 Registration Statement at the time it became effective, to ensure that said statements were not misleading and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. The Defendant Underwriters did not make a reasonable and diligent investigation nor did they possess reasonable grounds for the belief that the statements contained in the 12/05 Registration Statement at the time it became effective were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. As such, the Defendant Underwriters are liable to plaintiffs and the Class.

38. The defendants name herein were responsible for the contents and dissemination of the Registration Statements and caused their filing with the SEC.

39. Each of the defendants issued, cause to be issued and participated in the issuance of materially false and misleading written statements to the investing public which were contained in the Registration Statements, which misrepresented or failed to disclose, *inter alia*, the facts set forth above. As a direct and proximate result of defendants' acts and omissions in violation of the 1933 Act, the market price of ICG stock was artificially inflated and plaintiffs and the Class suffered substantial damage in connection with their purchases of ICG common stock. By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

40. At the times they purchased ICG shares, plaintiffs and other members of the Class were without knowledge of the facts concerning the false or misleading statements or omissions alleged herein. Less than one year has elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiffs filed

this Complaint. Less than three years have elapsed from the time that the securities upon which this Count is brought were bona fide offered to the public to the time plaintiffs filed this Complaint.

**COUNT II** .

**Against All Defendants for Violations of §12(a)(2) of the 1933 Act**

41. Plaintiffs repeat and reallege ¶¶1-40, as if set forth herein.

42. This Count is brought by plaintiffs on behalf of themselves and the Class pursuant to §12(a)(2) of the 1933 Act, 15 U.S.C. §77l(a)(2).

43. The defendants named in this Count were sellers, offerors, and/or solicitors of sales of the shares offered and sold in connection with the 11/05 and 12/05 Offerings. The written and oral communications made in connection with the Offerings contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and failed to disclose material facts.

44. Each defendant named in this Count solicited and/or was a substantial factor in the purchase by each member of the Class of ICG common stock. But for the participation by these defendants, including the solicitation by these defendants as set forth herein, the Offerings could not and would not have been accomplished. The defendants named herein participated as follows:

(a) They actively and jointly drafted, revised, and approved the Registration Statements and other written selling material by which the Offerings were made to the investing public. These written materials were "selling documents," calculated by these defendants to create interest in ICG's stock and were widely distributed by defendants for that purpose;

(b) These defendants finalized the Registration Statements and caused them to become effective. But for these defendants having drafted, filed, and signed the Registration Statements, the Offerings of ICG common stock could not have been made; and

(c) These defendants conceived and planned the Offerings and together jointly orchestrated all activities necessary to effect the sale of these securities to the investing public, by

issuing the securities, promoting the securities, and supervising their distribution and ultimate sale to the investing public.

45. The defendants were obligated to make a reasonable and diligent investigation of the written and oral statements made in the Registration Statements, selling sheets and other documents to insure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

46. Plaintiffs and the other members of the Class purchased or otherwise acquired ICG shares pursuant to the defective Registration Statements. Plaintiffs did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions.

47. Plaintiffs hereby tender to defendants those securities which plaintiffs and the other members of the Class continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon.

48. By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, §12(a)(2) of the 1933 Act. As a direct and proximate result of these violations of §12(a)(2), plaintiffs and the other members of the Class sustained substantial damage in connection with the purchase of ICG stock. On behalf of all members of the Class who still hold their ICG shares, plaintiffs seek rescissory damages. Accordingly, plaintiffs, on behalf of all members of the Class who continue to own such securities, seek to exercise their right to rescind and recover the consideration paid for their ICG shares and hereby elect to rescind and tender all ICG shares held by members of the Class to the defendants sued herein.

49. Less than three years have elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action. Less than one year has elapsed from the time when plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based to the time of the filing of this action.

## COUNT III

### Against Defendants Ross and ICG for Violations of §15 of the 1933 Act

50. Plaintiffs repeat and reallege ¶¶1-49, as if set forth herein.

51. This Count is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against defendants Ross and ICG.

52. Defendant Ross, by reason of his stock ownership, management position, and membership on the Company's Board of Directors, was a controlling person of the Company and had the power and influence, and exercised the same, to cause ICG to engage in the violations of law complained of herein. Defendant Ross is liable under §15 of the 1933 Act.

53. ICG controlled each of the Individual Defendants and is liable for their acts pursuant to §15 of the 1933 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein.

B. Awarding plaintiffs and the members of the Class compensatory damages pursuant to the 1933 Act.

C. Awarding plaintiffs and the other members of the Class rescission to the extent they still hold their ICG common stock, or, if said securities have been sold, awarding damages in accordance with §12(a)(2) of the 1933 Act in addition to interest at 8% per annum from the date of payment.

D. Awarding plaintiffs costs, experts' fees and reasonable attorneys' fees.

E. Awarding extraordinary, equitable and/or injunctive relief as permitted by law or equity, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of the 12/05 IPO to ensure that plaintiffs have an effective remedy.

F. Awarding such other relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial.

DATED: April 5, 2007

CARBONE & BLAYDES, P.L.L.C.
MARK W. CARBONE #6291

MARK W. CARBONE

2442 Kanawha Boulevard East
Charleston, WV 25311
Telephone: 304/342-3650
304/342-3651 (fax)
wvjustice@aol.com

STEVEN F. WHITE, PLLC
STEVEN F. WHITE #4021
405 Capitol Street, Suite 908
Charleston, WV 25301
Telephone: 304/720-1400
304/346-6731 (fax)
wvsteveshite@yahoo.com

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
MATTHEW P. MONTGOMERY
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
billl@lerachlaw.com
darrenr@lerachlaw.com
mattm@lerachlaw.com

Attorneys for Plaintiffs

S:\CptDraft\Securities\CPT Int'l Coal Group.doc